UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Mark A. Edin, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Associated Bank, N.A., a national association, ABC Corporation, John Doe, Mary Roe, and also all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint therein.<br><br>Defendants. | Case Number: 13-cv-01856 (SRN/SER)<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |

## INTRODUCTION

Defendant Associated Bank N.A. ("Associated") is attempting to wrongfully take the homestead real property of Plaintiff Mark A. Edin ("Plaintiff" or "Edin"), which was sold at a sheriff's sale on May 7, 2013. The redemption period was reduced to five weeks and has expired. After Plaintiff filed this lawsuit in the Hennepin County District Court, File No. 27-CV-13-11492, Associated filed an eviction action and then removed this lawsuit. Plaintiff's eviction is imminent. Plaintiff's property is real estate which is decidedly unique, and thus its wrongful sale will result in immediate and future damage that is irreparable to Plaintiff, and for which monetary damages cannot adequately compensate him.

Associated's foreclosure was improper because the bank failed to complete the prerequisites in Minn. Stat. § 580.02(3) because it did not record all assignments of the

mortgage **before** beginning its foreclosure by advertisement. Associated recorded its assignment **at the exact same time, to the second,** as it recorded its Notice of Pendency and Power of Attorney to Foreclose. Associated has had not complied with the strict statutory procedure in Minnesota Statutes Chapter 580, and therefore is not entitled to foreclose by advertisement. Absent strict statutory compliance, Associated was not entitled to foreclose and take title to or possession of Mr. Edin's property.

Therefore, it would not be in the interest of judicial economy, equity, or justice to allow Plaintiff to be evicted from his home. A preliminary injunction is appropriate and necessary to protect the Plaintiff's interest in his home. In addition, no harm or prejudice will come to Associated if this Court grants the Plaintiff's motion, because even in the unlikely circumstance that the Plaintiff does not prevail in the above-captioned lawsuit, Associated can simply move forward with the eviction action at that time. The benefit to Defendant in granting an eviction is far outweighed by the harm to the Plaintiff (coupled with the lack of harm to Associated) in denying this preliminary injunction.

## STATEMENT OF FACTS

1. The mortgage at issue herein was recorded against Plaintiff's home (the "Property," as defined in the Verified Complaint) in June 2006 and assigned to Associated Bank on October 4, 2012 (the "Assignment") (Verified Complaint, at ¶¶ 2-3.)

2. However, the Assignment was not recorded until October 24, 2012. (Verified Complaint, at ¶ 3, Ex. B.)

3. At the **exact same time** as the Assignment was recorded, Associated Bank commenced proceedings to foreclose the Mortgage by advertisement pursuant to

Minnesota Statute Chapter 580 (2012). (Verified Complaint, at ¶ 4.) Associated Bank's Notice of Pendency and Power of Attorney to Foreclose ("Notice of Pendency") was recorded on October 24, 2012—simultaneously with the Mortgage Assignment to Associated Bank. (Verified Complaint, at ¶ 4, Ex. C.) The Assignment and the Notice of Pendency were both time stamped "12:55 PM" on October 24, 2012.

4. Furthermore, in case Associated argues that it recorded its Assignment a few seconds before it recorded the Notice of Pendency, the Hennepin County RecordEASE Web Access system, Hennepin County's Land Records Site, lists the recording date and time for both the Assignment and the Notice of Pendency as "10/24/2012" at "12:55:00 PM" the **exact same time—to the second!** (Hartmann Aff., at ¶ 5, Ex. A.)

5. Based on the May 7, 2013 sheriff's sale, the five-week redemption period would have expired on June 11, 2013. (Verified Complaint, at ¶ 8.)

6. Plaintiff filed a lawsuit in Hennepin County District Court on June 19, 2013 (which Associated removed to this Court) because Plaintiff believed that he faced imminent eviction from his Property based on Associated Bank's failed attempt to foreclose by advertisement without strictly complying with Minn. Stat. § 580.02(3). (Verified Complaint, at ¶ 9.)

7. Associated filed an eviction action on June 20, 2013 as Hennepin County Court File No. 27-CV-HC-13-3576. (Affidavit of Erich J. S. Hartmann ("*Hartmann Aff.*"), at ¶ 2.) A cross-motion hearing was scheduled for July 16, 2013 for Plaintiff's motion to stay the eviction and Associated's motion for summary judgment on the

eviction. (*Hartmann Aff.*, at ¶ 2.) The parties continued the eviction hearing until August 25, 2013. (*Hartmann Aff.*, at ¶ 2.)

8.  Unless the Hennepin County Housing Court stays the eviction until after the above-captioned lawsuit has been heard on its merits, Plaintiff needs an immediate injunction preventing the eviction and/or the issuance of a writ of recovery of the Property. (*Hartmann Aff.*, at ¶ 3.)

9.  Plaintiff cannot afford to finance this lawsuit and simultaneously pay a moving company to move all of his personal possessions (or, alternatively, to forego working in order to move himself), let alone commit the time and energy to this litigation while engaging in the moving process. (*Hartmann Aff.*, at ¶ 4.)

## ARGUMENT

### I. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION IN ORDER TO PREVENT IMMEDIATE AND IRREPARABLE INJURY TO HIM.

Rule 65 of the Federal Rules of Civil Procedure authorizes a court to grant a preliminary injunction to prevent irreparable injury pending an ultimate determination of the action. Fed. R. Civ. P. 65; *Marine Cooks & Stewards, AFL v. Panama S.S. Co.*, 268 F.2d 935 (9th Cir. 1959); *See, also, Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (C.A.N.Y. 1969). The function of a preliminary injunction is to preserve *status quo* pending trial on merits. *Collum v. Edwards*, 578 F.2d 110 (5th Cir. 1978). *See, also, American Hospital Ass'n v. Harris*, 625 F.2d 1328 (7th Cr. 1980); *Diversified Mortg. Investors v. U.S. Life Ins. Co. of New York*, 544 F.2d 571 (C.A.N.Y. 1976); *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181 (C.A.N.M. 1975); *Morgan v. Fletcher*, 518 F.2d 236

(C.A.Tex. 1975), rehearing denied 522 F.2d 1280. In determining whether to issue a preliminary injunction, the Court must consider the following four factors:

(1) the threat of irreparable harm to the moving party should a preliminary injunction be denied;

(2) the balance between this harm and the harm that granting the injunction will cause to the other litigant;

(3) the probability that the moving party will succeed on the merits; and

(4) the public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Application of the *Dataphase* factors confirms that an order for preliminary injunction is appropriate.

### A. A Preliminary Injunction is Appropriate to Address the Threat of Immediate and Irreparable Harm Posed by Defendants.

The first factor of the *Dataphase* analysis, the threat of irreparable harm to the moving party if a preliminary injunction is denied, strongly supports the grant of immediate injunctive relief. The purpose of a temporary injunction is to preserve the status quo until judgment. *Collum,* 578 F.2d 110.

In this case, Plaintiff faces a threat of immediate and irreparable harm in the absence of a preliminary injunction. The Minnesota Court of Appeals has clearly decided this issue in *Strangis v. Metropolitan Bank,* where it stated that a party would suffer irreparable harm by the foreclosure of the mortgage on their property, because real property is unique, which money damages may not adequately compensate, and therefore, legal remedies are inadequate, and an injunction may be granted. *Strangis v. Metropolitan Bank,* 385 N.W.2d 47, 48-49 (Minn. Ct. App. 1986).

5

Plaintiff faces imminent and irreparable harm because the writ of recovery is imminent and will eliminate Plaintiff's last remaining interest and right in the Property. The *status quo* to be maintained is only to postpone the imminent eviction and/or writ of recovery on the Property, and stopping all foreclosure proceedings, until Plaintiff has a chance to litigate his claims.

### B. The Balance between this Harm and the Harm that Granting the Injunction Militates in Favor of the Granting of a Preliminary Injunction

The second factor of the *Dataphase* analysis, the comparative harm Plaintiff will suffer if the injunctive relief is denied, contrasted to the potential harm Associated might suffer if the restraining order is granted, also weighs heavily in favor of granting the application. Under this factor, the Court considers whether the harm likely imposed on the nonmoving party by issuing the injunction outweighs the harm imposed on the moving party by denying the injunction. *Marigold Foods, Inc. v. Redalen*, 809 F.Supp. 714, 720 (D. Minn. 1992).

The harm caused to Plaintiff by allowing Associated to complete the eviction would allow Associated to wrongfully take Plaintiff's Property and would result in ***immediate, permanent and irreparable harm to Plaintiff***. The Property is Plaintiff's property, and the Plaintiff would suffer *irreparable harm* by the foreclosure, since real homestead property is unique, and money damages will not adequately compensate Plaintiff for his loss. *See Strangis*, 385 N.W.2d at 48-49 (emphasis supplied). Once Associated takes Plaintiff's Property, the damage will be done and it will be unchangeable forever because Plaintiff will not have sufficient time or money to continue

this litigation if he is forced to hire a moving company or take time off of work to move. The inequitable result will be permanent, and will <u>forever</u> change Plaintiff's rights to the Property in a manner that is not compensable by money damages. Status quo demands that Associated be prohibited from evicting the Plaintiff or taking any action to dispossess Plaintiff until this case is resolved, and the parties' rights and obligations are determined herein.

By comparison, Associated will suffer no meaningful loss from issuance of the injunctive relief such as the one proposed here. The proposed order would simply prohibit Associated from taking any further action to evict the Plaintiff, or taking any action to dispossess Plaintiff until this case is resolved, and the parties' rights and obligations are determined.

### C. Plaintiff Will Prevail on his Claims Because Defendants did not Record all Assignments of the Mortgage Before Recording the Notice of Pendency

For injunctive relief to be issued, it is necessary for the party seeking relief to establish a likelihood of success on the merits. In applying the third factor of the *Dataphase* analysis, the Court does not consider whether the movant will ultimately prevail on the merits, and must "avoid deciding with any degree of certainty who will succeed or not succeed." *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 371 (8th Cir. 1991) (citation omitted). Rather, the court must "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" *Calvin Klein Cosmetics Corp. v. Lenox Lab.,* 815 F.2d 500, 503

(8th Cir. 1987) (quoting *Dataphase,* 640 F.2d at 113). As the Minnesota Court of Appeals has said, in *Metropolitan Sports Facilities Com'n v. Minnesota Twins Partnership,* 638 N.W.2d 214, 226 (Minn. Ct. App. 2002):

> If a plaintiff can show <u>no</u> likelihood of prevailing on the merits, the district court errs as a matter of law in granting a temporary injunction. *Sanborn Mfg. Co. v. Currie,* 500 N.W.2d 161, 165 (Minn. Ct. App. 1993). But if a plaintiff makes <u>even a doubtful showing</u> as to the likelihood of prevailing on the merits, a district court may consider issuing a temporary injunction to preserve the status quo until trial on the merits. *Dahlberg,* 272 Minn. at 275 n. 13, 137 N.W.2d at 321 n. 13 (upholding temporary injunction <u>despite finding that plaintiff may have serious obstacles to overcome</u> before establishing its right to what in effect amounts to specific performance of the franchise agreement). (Emphasis supplied).

Based on the information it has obtained thus far, Plaintiff will prevail on his claims and makes much more than a doubtful showing that he will prevail at trial. **<u>Minn. Stat. § 580.02 requires the foreclosing mortgagee to record all assignments of a mortgage *before* taking *any action* to foreclose by advertisement.</u>** Minn. Stat. § 580.02(3) (2012); *Ruiz v. 1st Fid. Loan Servicing, LLC,* 829 N.W.2d 53, 57-58 (Minn. 2013) (...[T]he plain meaning of section 580.02(3) requires all assignments of the mortgage to be recorded before the mortgagee has the right to engage in the process of foreclosure by advertisement. Additionally, in light of the statutory language that recording all assignments of the mortgage is "requisite" to make such foreclosure "by advertisement," **<u>the statute unambiguously mandates strict compliance.</u>**) (Emphasis supplied.) As explained by the Minnesota Supreme Court in *Ruiz v. 1st Fidelity Loan Servicing, LLC,* "**<u>the requisites called for [in § 580.02] must exist when the *first step* is taken in the foreclosure.</u>** If not, the right to proceed to do what is necessary for a valid

sale is suspended." *Ruiz*, 829 N.W.2d at 58 (emphasis supplied).

The mortgagee in *Ruiz* "hand-delivered" its notice of pendency and its assignment of mortgage to the Hennepin County Recorder's office at the same time, and the documents were recorded at the same time. *Id.* at 55 (stating that "the law firm representing 1st Fidelity hand-delivered the [] assignment and the notice of pendency to the Hennepin County Recorder on May 14, 2010" and the documents were recorded on May 18, 2010). The mortgagee in *Ruiz* argued that the assignment did not have to be recorded until the sheriff's sale, rather than before the foreclosure by advertisement process begins. *Id.* at 57. In ruling for the mortgagor, the Minnesota Supreme Court reaffirmed Minnesota's long-standing precedent requiring strict compliance, and stating that the "requisites called for must exist *when the first step is taken* in the foreclosure." *Id.* at 58 (citing *Adlinger v. Close*, 161 Minn. 404, 201 N.W. 625 (1925)) (emphasis in original).

Here, the requisites called for in § 580.02(3)—namely, the requirement to record all assignments of the mortgage—did not exist when the first step was taken in the foreclosure. Associated's *first step* was to file its Notice of Pendency, which it did on October 24, 2012 at 12:55:00 PM. At that time, the requisites called for in § 580.02 did not exist because Associated had not previously recorded its Assignment. Like the mortgagee in *Ruiz*, Associated recorded its Assignment simultaneously with—not before—its *first step*. See *id.* at 55.

Without challenging the facts, including the recording data of the Hennepin County Recorder's Office, Associated cannot establish that it recorded its Assignment

9

*before* taking its *first step* of recording its Notice of Pendency. Instead, Associated will apparently argue that recording a Notice of Pendency and Power of Attorney to Foreclose is somehow not a "first step," or even a "step" at all[1] in the foreclosure by advertisement process.

Recording the Notice of Pendency is a "step" in the foreclosure by advertisement process; in fact it is another mandatory step, required by Minn. Stat. § 580.032, subd. 3 (2012).

Since Associated failed to record its Assignment before taking its first step in the foreclosure by advertisement, the requisites called for in Chapter 580 did not exist *"when the first step was taken in the foreclosure," Ruiz* at 58, and Associated's "right to proceed to do what [was] necessary for a valid sale [was] suspended," *id.*, and consequently its sheriff's certificate was and is void. See *Ruiz* at 59.

Therefore, Plaintiff is likely to prevail on the merits herein.

### D. *Enjoining Defendants from improperly evicting and dispossessing Plaintiff from his Property serves the public interest*

Associated's actions stand as a threat to Plaintiff's interests, and also to the interests of every other homeowner and borrower in a similar situation whose lender has attempted to take his home without court supervision and has failed to strictly comply with the statutory requirements. Associated, and for that matter, other servicers, lenders, and mortgagees, must be sent a clear and strong message, that they will not be allowed to foreclose on citizens' properties unless they can clearly and adequately show that they

---

[1] Since recording the Notice of Pendency was apparently the first public action Associated took in this foreclosure by advertisement.

strictly complied with the statutory requirements and that they are actually entitled to foreclose on the property and, in the end, remove the borrower from his home using the court in the eviction action to summarily "rubber stamp" the foreclosure proceedings. Associated, and other servicers, lenders, and mortgagees, must not be allowed to negligently and/or intentionally state in sworn documents that they have complied with all of the foreclosure requisites when they have failed to do so. This is important in order to protect every citizen from foreclosure, when the foreclosing party has committed errors that vitiate the authority or right to foreclose. Public policy also supports maintaining the status quo until trial. Enjoining Associated will preserve the status quo. A temporary injunction is appropriate under these circumstances.

## II. RULE 65(C) BOND REQUIREMENT

"Rule 65(c) of the Federal Rules of Civil Procedure typically requires that a party requesting a temporary restraining order post a bond or other security. However, in some circumstances, courts waive the bond requirement," such as cases where Plaintiff will not personally benefit from the case and a public purpose is being served. *Masterman ex rel. Coakley v. Goodno,* 2003 WL 22283375, *1 (D. Minn. 2003) (citing *Long Term Care Pharmacy Alliance v. Ferguson,* 260 F.Supp.2d 282, 295 (D. Mass. 2003); *Pharmaceutical Soc'y of New York v. New York Dept. of Soc. Servs.,* 50 F.3d 1168 (2d Cir.1995); *Temple Univ. v. White,* 941 F.2d 201, 220 (3d Cir. 1991)). While the Eighth Circuit has not approved a total waiver of the bond requirement in a case where a public purpose is being served but the plaintiff will also receive a benefit, reduction of a bond to $1,000.00 has been found to be sufficient. *Masterman ex rel. Coakley,* 2003 WL

22283375, *1.

In this case, Plaintiff asks that only a $5,000.00 bond or less be required at this stage of the case. Again, forcing Associated to stop its foreclosure and eviction proceedings will cause no harm to Associated if Plaintiff ultimately loses his case, since Associated will likely obtain Plaintiff's Property if Plaintiff loses. At this point, the facts appear to be undisputed and Associated is apparently willing to adopt the improbable argument that filing a Notice of Pendency with the county recorder's office is somehow not a "step" in the foreclosure by advertisement process, even though the recording is a public action that is required by § 580.032, subd. 3. Given the foregoing, a bond in excess of $5,000.00 would be excessive.

## CONCLUSION

For the forgoing reasons, Plaintiff, Mark A. Edin, respectfully requests that this Court issue a preliminary injunction as set forth in the Verified Complaint and Plaintiff's Motion for Preliminary Injunction pursuant to Fed. R. Civ. P. 65(b).

Respectfully Submitted,

**DANIELS & KIBORT, PLLC**

Dated: July 24, 2013

/s/ Erich J.S. Hartmann
Erich J.S. Hartmann (Atty. ID #0391189)
Jesse H. Kibort (Atty. ID #0328595)
Christopher M. Daniels (Atty. ID#271809)
Attorneys for Plaintiff Mark A. Edin
14225 Highway 55
Plymouth, Minnesota 55447
Telephone: (763) 201-1277
Facsimile: (763) 201-1216
Email: ehartmann@danielskibortlaw.com