UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Mark A. Edin,<br><br>        Plaintiff,<br><br>v.<br><br>Associated Bank, N.A., ABC Corporation, John Doe, Mary Roe, and all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein,<br><br>        Defendants. | Case No. 13-CV-1856 (SRN/SER)<br><br>**MEMORANDUM OPINION AND ORDER** |

Erich J.S. Hartmann, Jesse H. Kibort, and Christopher M. Daniels, Daniels & Kibort, PLLC, 14225 Highway 55, Plymouth, Minnesota 55447, for Plaintiff.

Michael R. Sauer, Wilford Geske & Cook, P.A., 8425 Seasons Parkway, Suite 105, Woodbury, Minnesota 55125, for Defendant Associated Bank, N.A.

SUSAN RICHARD NELSON, United States District Judge

### I.     INTRODUCTION

This matter is before the Court on Plaintiff Mark A. Edin's Motion for a Preliminary Injunction[1] [Doc. No. 6].  For the reasons set forth below, the Court denies the Motion.[2]

---

[1]     In his Motion for a Preliminary Injunction, Plaintiff moves pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, which governs motions for temporary restraining orders.  Because Defendant Associated Bank, N.A., received notice and the Motion was fully briefed, and because Plaintiff otherwise characterizes his Motion as one for a preliminary injunction rather than a temporary restraining order, the Court will treat it as a motion for a preliminary injunction pursuant to Rule 65(a).

## II. BACKGROUND

According to the Verified Complaint in this matter, Plaintiff Mark A. Edin ("Plaintiff") purchased real estate located at 11756 Texas Avenue North, Champlin, Minnesota ("Champlin Property"), on May 12, 2006. (Verified Complaint ¶¶ 1, 2[3] ("Compl.") [Doc. No. 1-1].) That same day, Plaintiff executed a promissory note payable to First National Bank of Hudson and a mortgage securing his indebtedness on the note. (Id. ¶ 2 & Ex. A.) The mortgage was recorded on June 5, 2006, by the Hennepin County Recorder's Office. (Id.)

On October 4, 2012, First National Bank of Hudson assigned the mortgage (the "Assignment") to Defendant Associated Bank, N.A. ("Associated Bank"). (Id. ¶ 3.) Associated Bank recorded the Assignment, as well as a Notice of Pendency and Power of Attorney to Foreclose ("Notice of Pendency"), with the Hennepin County Recorder's Office on October 24, 2012. (Id. ¶¶ 3–4 & Exs. B–C.) The Assignment was recorded as document number A9860280, and the Notice of Pendency was recorded as document number A9860281. (Id.) The Notice of Mortgage Foreclosure Sale ("Notice of Sale") was first published on October 25, 2012, in Finance and Commerce. (Id. at Ex. E.) On November 13, Plaintiff filed an Affidavit to Postpone Sale of Foreclosed Property for five months, in exchange for reducing the redemption period to five weeks. (Id. ¶ 5 & Ex. D.)

---

[2] The following constitutes the Court's findings of fact and conclusions of law, as required by Federal Rules of Civil Procedure 52(a) and 65.

[3] Plaintiff's Verified Complaint re-starts numbering after Paragraph 4. With the exception of this citation to Paragraph 1, all other citations herein are to the second set of numbered paragraphs in the Verified Complaint.

At a sheriff's sale on May 7, 2013, Associated Bank purchased the Champlin Property, subject to the five-week redemption period set to expire on June 11.  (Id. ¶ 6 & Ex. E.)  On June 10, Associated Bank conveyed the Champlin Property to Federal National Mortgage Association ("FNMA").  (Sauer Aff. ¶ 1 & Ex. 1 [Doc. No. 12].) FNMA commenced an eviction action in Hennepin County District Court against Plaintiff on June 21, alleging that Plaintiff failed to vacate the Champlin Property on or before the expiration of the redemption period.  (Id. ¶ 2.)  On June 24, Plaintiff served Associated Bank with the Summons and Complaint in the instant matter, also filed in Hennepin County District Court.  (Notice of Removal ¶ 1 [Doc. No. 1].)  Plaintiff alleges that Associated Bank failed to strictly comply with Minnesota's foreclosure by advertisement statute, Minnesota Statutes § 580.01, et seq., by recording the Assignment at the same time as the Notice of Pendency.  (Compl. ¶¶ 11–21 [Doc. No. 1-1].)  He also asserts a cause of action for slander of title based on the statement in the Notice of Sale that "all pre-foreclosure requirements have been complied with," claiming the statement is false because the Assignment was not recorded before the Notice of Pendency.  (Id. ¶¶ 22–29.)

On July 11, Associated Bank filed with this Court a Notice of Removal of Plaintiff's Hennepin County lawsuit on the basis of diversity jurisdiction.  (See Notice of Removal ¶¶ 2–5 [Doc. No. 1].)  Associated Bank then filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc. No. 3], which is scheduled to be heard on September 9 [Doc. No. 4].  On July 24, Plaintiff filed his Motion for a Preliminary Injunction [Doc. No. 6], along with a supporting memorandum [Doc. No. 8]

3

and an affidavit [Doc. No. 9]. Associated Bank filed an opposition memorandum [Doc. No. 11] and an affidavit [Doc. No. 12] on July 31, and oral arguments were heard on August 2 [Doc. No. 13]. Meanwhile, on July 25, the Hennepin County District Court granted possession of the Champlin Property to FNMA, denying Plaintiff's motion to stay the eviction proceedings pending resolution of the instant action. (Sauer Aff. ¶ 3 & Ex. 2 [Doc. No. 12].)

### III. DISCUSSION

Plaintiff seeks a preliminary injunction prohibiting Associated Bank from evicting him or taking action to dispossess him of the Champlin Property. (Mot. to Dismiss at 1–2 [Doc. No. 6].) "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). A district court must consider four factors in determining whether preliminary injunctive relief is warranted: "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citing Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981)). In analyzing these factors, "'a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene.'" Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 601 (8th Cir. 1999) (quoting United Indus. Corp. v. Clorox Co., 140 F.3d 1175,

4

1179 (8th Cir. 1998)). However, the burden of establishing the four <u>Dataphase</u> factors lies with the moving party. <u>Watkins Inc.</u>, 346 F.3d at 844 (citation omitted).

### A.     Likelihood of Success

While "no single factor is determinative," <u>Dataphase Sys., Inc.</u>, 640 F.2d at 113, the likelihood of success factor is the most important, <u>Barrett v. Claycomb</u>, 705 F.3d 315, 320 (8th Cir. 2013) (citation omitted). Therefore, in order to obtain a preliminary injunction, the moving party must show that he has a "fair chance of prevailing" on his claims. <u>Planned Parenthood Minn., N.D., S.D. v. Rounds</u>, 530 F.3d 724, 732 (8th Cir. 2008). "[A]n injunction cannot issue if there is no chance of success on the merits." <u>Mid-Am. Real Estate Co. v. Iowa Realty Co.</u>, 406 F.3d 969, 972 (8th Cir. 2005) (citations omitted). However, the question is not whether the moving party has "'prove[d] a greater than fifty percent likelihood that he will prevail.'" <u>PCTV Gold, Inc. v. SpeedNet, LLC</u>, 508 F.3d 1137, 1143 (8th Cir. 2007) (quoting <u>Dataphase Sys., Inc.</u>, 640 F.2d at 113). Rather, the question is whether any of the movant's claims provides "fair ground for litigation." <u>Watkins Inc.</u>, 346 F.3d at 844 (citation and internal quotation marks omitted). In the Court's view, Plaintiff has not shown any likelihood of success against Associated Bank on either of his two claims: violation of Minnesota's foreclosure by advertisement statute or slander of title.

### 1.     Foreclosure by advertisement

Plaintiff's first asserted cause of action against Associated Bank is violation of Minnesota's foreclosure by advertisement statute, Minnesota Statutes § 580.01, <u>et seq</u>. According to § 580.01, "[s]ubject to the provisions of section 541.03, any mortgage of

real estate containing a power of sale, upon default being made in any condition thereof, may be foreclosed by advertisement." Minnesota Statutes § 580.02 governs the "requisites" for foreclosure by advertisement. Pursuant to that provision, "it is requisite . . . (3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded; . . . and (4) before the notice of pendency as required under section 580.032 is recorded, the party has complied with [the requirements regarding notice of the opportunity for foreclosure prevention counseling]." Minn. Stat. § 580.02(3)–(4). The foreclosing party must also provide six weeks' published notice that the mortgage will be foreclosed by sale. Minn. Stat. § 580.03. In addition, "[a] person foreclosing a mortgage by advertisement shall record a notice of the pendency of the foreclosure with the county recorder or registrar of titles in the county in which the property is located before the first date of publication of the foreclosure notice." Minn. Stat. § 580.032, Subd. 3. "If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void." Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W.2d 487, 494 (Minn. 2009) (citation omitted).

Plaintiff argues that, pursuant to the statute, foreclosure by advertisement proceedings are commenced on—and, thus, all assignments of a mortgage must be recorded by—the date the foreclosing party takes the "first step" in the foreclosure proceedings. (See Mem. of Law in Supp. of Pl.'s Mot. for a Prelim. Inj. at 8–10 ("Pl.'s Mem.") [Doc. No. 8].) According to Plaintiff, Associated Bank violated the statute by recording the Assignment at the same time as it recorded the Notice of Pendency, which

6

Plaintiff asserts was the first step Associated Bank took in the foreclosure proceedings. (See id. at 9–10.) Therefore, Plaintiff contends, the foreclosure is void. (See id. at 10.)

Whether Plaintiff has a fair chance of prevailing on his claim thus depends on the date on which foreclosure by advertisement proceedings commence pursuant to Minnesota Statutes § 580.01, et seq. Because the statute itself does not identify the action that commences foreclosure by advertisement, this Court must predict how the Minnesota Supreme Court would resolve the issue. See Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 876 (8th Cir. 2000). In Arzt v. Bank of America, N.A., another judge in this District analyzed this exact question. 883 F. Supp. 2d 792, 795 (D. Minn. 2012) ("When, as here, Minnesota law is uncertain, the court must predict how the Minnesota Supreme Court would resolve the issue of commencing foreclosure by advertisement under Chapter 580 of Minnesota Statutes."). This Court agrees with the reasoning therein.

Briefly stated, both the statute as a whole and the structure of the provision at issue, § 580.02, suggest that foreclosure by advertisement proceedings are commenced upon publication of a notice of sale. Id. at 796. First, as noted above, the foreclosure by advertisement statute is subject to Minnesota Statutes § 541.03, which states that "proceedings to foreclose a real estate mortgage by advertisement shall be deemed commenced on the date of the first publication of the notice of sale." Minn. Stat. § 541.03, Subd. 2 (emphasis added). Second, the "requisites" for commencement of foreclosure by advertisement listed in § 580.02 include recording of the assignments of the mortgage and recording of the notice of pendency. See Minn. Stat. § 580.02(3)–(4);

7

Arzt, 883 F. Supp. 2d at 796 ("The Minnesota Legislature made recording of assignments and recording the notice of pendency parallel requisites."). Therefore, interpreting the statute to provide for commencement by publication of the notice of sale avoids "the illogical result that recording a [n]otice of [p]endency is both a requisite to commencing foreclosure and the act that commences foreclosure."[4]  Arzt, 883 F. Supp. 2d at 796. Accordingly, this Court, like Judge Doty in Arzt, finds that the Minnesota Supreme Court would determine that publication of a notice of sale commences foreclosure by advertisement proceedings.  See id.

Plaintiff argues that the Minnesota Supreme Court's decision in Ruiz v. 1st Fidelity Loan Servicing, LLC, 829 N.W.2d 53 (Minn. 2013), supports his position. (See Pl.'s Mem. at 8–10 [Doc. No. 8].)  While that case does state that a foreclosing party must strictly comply with § 580.02(3) and that "the 'requisites called for must exist when the first step is taken in the foreclosure,'" it does not directly answer the question of what constitutes the "first step," or commencement, of foreclosure by advertisement. Ruiz, 829 N.W.2d at 58 (quoting Adlinger v. Close, 201 N.W. 625, 626 (Minn. 1925)) (emphasis omitted).  However, in determining that the foreclosing party in that case did not strictly comply with § 580.02, the Minnesota Supreme Court noted: "[T]he third assignment was not recorded until . . . the same day as the first publication of the notice of sale.  As such, the third assignment was not recorded before the beginning of the

---

[4]   The court in Arzt also noted that interpreting the statute to mean that recording the notice of pendency commences foreclosure would render meaningless the foreclosure prevention counseling notice requirement in Minnesota Statutes § 580.02(4), because "the foreclosing party could 'commence' foreclosure immediately after sending the counseling notice." Arzt, 883 F. Supp. 2d at 796 n.3.

foreclosure proceeding." Id. Thus, the Minnesota Supreme Court's application of the law suggests that the court in Arzt was correct. At the very least, the Minnesota Supreme Court's opinion does not contradict the Arzt court's conclusion.

In this case, the Assignment and the Notice of Pendency were recorded on October 24, 2012. The foreclosure by advertisement proceedings were not commenced, however, until October 25, 2012, when the Notice of Sale was first published. Therefore, at the time the foreclosure by advertisement proceedings were commenced, the requisite recording of the Assignment had already occurred. Based on the foregoing, Plaintiff does not have a fair chance of prevailing on his claim that Associated Bank violated Minnesota Statutes § 580.01, et seq.

### 2. Slander of title

Plaintiff's second asserted cause of action against Associated Bank is slander of title. In Minnesota, the elements of a slander of title claim are:

(1) That there was a false statement concerning the real property owned by the plaintiff;

(2) That the false statement was published to others;

(3) That the false statement was published maliciously;

(4) That the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.

Paidar v. Hughes, 615 N.W.2d 276, 279–80 (Minn. 2000) (citations omitted).

Plaintiff does not specifically address his slander of title claim in the context of his Motion for a Preliminary Injunction. Even assuming Plaintiff meant to assert this claim

9

as a basis for injunctive relief, the Court finds that he does not have a fair chance of prevailing on the merits. The statement upon which Plaintiff bases his claim is the statement in the Notice of Sale that "all pre-foreclosure requirements have been complied with." Plaintiff claims that the statement is false because the Assignment was not recorded before the Notice of Pendency. For the reasons stated above, the fact that the Assignment was recorded at the same time as the Notice of Pendency does not render false the statement that "all pre-foreclosure requirements have been complied with." Therefore, this claim also does not present fair grounds for litigation. Because Plaintiff has not established some likelihood of success on the merits of either of his claims, a preliminary injunction is inappropriate.

### B. The Remaining Factors

In addition, the remaining Dataphase factors do not weigh in Plaintiff's favor to such a degree that justice requires the court to intervene. First, Plaintiff has not demonstrated a sufficient threat of irreparable harm. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's LLC, 563 F.3d 312, 319 (8th Cir. 2009). When denying injunctive relief will result in an eviction, the irreparable harm factor "is likely met." Saygnarath v. BNC Mortg., Inc., Civ. No. 06-3465 (DWF/AJB), 2007 WL 1141495, at *2 (D. Minn. Apr. 17, 2007) (citation omitted). However, a moving party's delay in seeking a preliminary injunction is a consideration in determining the propriety of relief. Gomez v. Marketplace Home Mortg. LLC, Civ. No. 12-153 (JRT/LIB), 2012 WL 1517260, at *3 (D. Minn. Apr. 30,

2012) (citations omitted).  Here, the redemption period expired on June 11, 2013. Plaintiff waited until almost two weeks after that date to serve Associated Bank with the state court action and did not move for a preliminary injunction until six weeks had passed.  While eviction itself may be irreparable harm in some instances, Plaintiff's unexplained delay in seeking preliminary injunctive relief until weeks after the redemption period had already expired lessen the propriety of awarding relief.  Therefore, at most, this factor only slightly favors Plaintiff.

Second, the balance of harms appears to, at most, only slightly favor Plaintiff.  In balancing the harms, a court must compare the harm that will result to the moving party if relief is denied with the harm that will result to the other litigants if the relief is granted. See Dataphase Sys., Inc., 640 F.2d at 114.  In this case, Plaintiff claims he will suffer irreparable harm through the loss of his property and an inability to finance this litigation if he has to hire a moving company or take time off of work to move.  (See Pl.'s Mem. at 6–7 [Doc. No. 8].)  On the other hand, Associated Bank asserts that FNMA, the successor to Associated Bank, accrues damages every day that it is prevented from selling the Champlin Property and recouping the amount owed by Plaintiff.  (See Associated Bank, N.A.'s Mem. of Law in Opp. to Pl.'s Mot. for a Prelim. Inj. at 12 ("Def.'s Opp. Mem.") [Doc. No. 11].)  While "losing a basic necessity such as shelter is a greater harm to an individual . . . than a company's temporary loss of income," Saygnarath, 2007 WL 1141495, at *3, Plaintiff has not asserted that he will be without shelter.  Moreover, the Hennepin County District Court has already determined that Plaintiff is not properly in possession of the Champlin Property and that a stay of the eviction proceedings pending

resolution of the instant action was improper.  Therefore, the balance of harms tips, at most, only slightly in favor of Plaintiff.

Finally, the public interest is best served by denying the injunction.  Plaintiff argues that the public interest supports sending a message that the statutory foreclosure requirements must be strictly complied with.  (See Pl.'s Mem. at 10–11 [Doc. No. 8].)  Associated Bank argues that public policy supports the freedom to contract and Associated Bank's right to enforce the note and mortgage at issue.  (See Def.'s Opp. Mem. at 13 [Doc. No. 11].)  Both parties have asserted valid interests.  However, in light of Plaintiff's failure to demonstrate a likelihood of success on the merits of his claim that Associated Bank did not strictly comply with the foreclosure by advertisement statute, the Court finds that this factor weighs against awarding the requested injunctive relief.

## IV.   CONCLUSION

Because the first factor weighs so strongly in favor of Associated Bank, an injunction would be inappropriate.  In addition, the second and third factors weigh, at most, only slightly in favor of Plaintiff.  And, the fourth factor weighs in favor of Associated Bank.  Accordingly, the Dataphase factors weigh in favor of denying a preliminary injunction in this case.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for a Preliminary Injunction [Doc. No. 6] is **DENIED**.

Dated: August 21, 2013            s/Susan Richard Nelson
                                  SUSAN RICHARD NELSON
                                  United States District Judge